**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN CAMERON BENKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 03-233J |
| v. | ) |
| | ) JUDGE GIBSON |
| PORTAGE AREA SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the Defendant's Motion for Summary Judgment (Document No. 33).

This Court possesses subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), 42 U.S.C. § 2000(e)-5(f)(3) and venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

For the reasons set forth herein, summary judgment will be granted in favor of the Defendant and against the Plaintiff.

## I. STATEMENT OF MATERIAL FACTS

The Defendant set forth a statement of material facts in accordance with Local Rule of Court 56.1 (B)(1) (*See* Document No. 34) and the Plaintiff failed to respond to these statements in accordance with Local Rule 56.1(C)(1). Therefore, in accordance with Local Rule 56.1 (E), the statement of material facts submitted by the Defendant shall be deemed admitted by the Plaintiff, however, the

italicized statements are considered by the Court as proposed conclusions of law which are not appropriate to be accepted as undisputed material facts as such conclusions can only be made by the Court after analysis of the material facts. The statements submitted by the Defendant are as follows:

Plaintiff was employed as a science teacher at the Portage Area School District ("the District") for thirty-three (33) years. Throughout his tenure, Plaintiff was a member of the teacher's union and subject to a Collective Bargaining Agreement. Plaintiff voluntarily retired at the end of the 1996-1997 school year. Plaintiff admits no one at the District forced him to retire. The Collective Bargaining Agreement that Plaintiff was subject to at the time of his retirement did not include an early retirement incentive. During the last few years of his teaching at the District, Plaintiff spent one half day teaching science to the elementary students and one half day teaching high school students. He was also chairman of the Science Department. Plaintiff took a sabbatical for the 1994-1995 school year for "health reasons". On June 8, 1994 Dr. John Karduck forwarded a letter to the District [] specifying the following:

"Mr. J. Cameron Benko is being treated for chest pain and degenerative lumbar disc disease. It is my opinion that he would benefit from a sabbatical for medical reasons."

The above-mentioned letter included the only medical information provided by Plaintiff to the School District concerning any health condition. No other details were provided to the School District by the Plaintiff.

When Plaintiff returned to his teaching duties at the beginning of the 1995 school year, he returned without restriction. He was still the head of the Science

2

Department. His schedule remained the same. Furthermore, Plaintiff did not request nor did he require any accommodations relative to his physical condition. *The District never regarded Plaintiff as being "disabled"*. Plaintiff himself admits that his alleged heart condition and intermittent back pain did not require any accommodations and he could still perform his job functions. At his deposition, Plaintiff explained that his conditions merely "slowed me [Plaintiff] down." Plaintiff never specified he was going to retire because he was "disabled", and has not applied for nor received disability retirement benefits. Despite Plaintiff's assertion in his Interrogatory Responses that he worked a reduced schedule after his sabbatical, no records support his assertion and both Dr. Kittell and Mr. Kunko deny that was the case. Furthermore, Plaintiff himself did not testify that he had a reduced schedule when he returned to work for the 1995 school year or at any time. To the contrary, he testified he returned to work without any accommodation. Dr. Kittell is currently the Superintendent. At the time Mr. Benko retired, Dr. Kittell was the Elementary/Middle School Principal and would have been aware of a reduced schedule if one existed. Further, Mr. Kunko testified if a reduced schedule would have been in place he would have known and a salary reduction would have been required.

*Plaintiff's Complaint establishes that* Plaintiff was aware [that] the Collective Bargaining Agreement in place during the relevant time frame did not include a retirement incentive because Plaintiff refers to a union representative approaching the School Board to address the possibility of providing a retirement incentive for the 1996-

3

1997 school year. The School Board of Directors has the ultimate power to hire and fire personnel, enter into contracts, and determine if the District will offer a retirement incentive package at the end of a particular school year. As a practical matter, whether or not the School Board offers a retirement incentive depends upon the budgetary concerns at issue in a particular year. Retirement incentives are designed to save the School District money by hiring less experienced teachers at lower starting salaries upon the retirement of seasoned teachers making higher salaries. During the 1996-1997 school year, the Board did not choose to offer a retirement incentive as it had on occasion in other years. An offer of a retirement incentive package would be the exception to the general rule of abiding by the terms included in the applicable Collective Bargaining Agreement only. Plaintiff wrote to the School Board on March 24, 1997, noting in that correspondence he intended to retire due to his "medical condition" and requested the Board consider a retirement package, including continued hospitalization coverage. No details were provided regarding the referenced "medical condition". In that letter, Plaintiff specified he would appreciate a written response. Plaintiff admits he never received a written response from the Board regarding any buy-out package that would include continued payment for health care benefits. Plaintiff specified he allegedly relied on the "word" of the Superintendent at the time, Jerome Yetsko, concerning Plaintiff[] receiving a retirement package. *Plaintiff offered no evidence from Mr. Yetsko supporting this allegation.* Even if this Honorable Court assumes Plaintiff's assertion is accurate, Plaintiff admits he was well aware that the

4

Board would have to vote on and approve a retirement package for such an incentive to be in effect. Plaintiff does not contest that no such retirement incentive was approved by the School Board that year. No further written inquiries were submitted by Plaintiff about a retirement incentive either to the Board or to Jerome Yetsko. Nothing was ever provided by Jerome Yetsko promising any type of retirement incentive or continuing of benefits. Toward the end of the 1996-97 school year, Plaintiff sent a formal letter announcing his retirement to the School Board, dated May 12, 1997. Nowhere in this letter does he mention his retirement being contingent upon receiving an incentive package from the School District. In response to Plaintiff's retirement letter of May 12, 1997, the Superintendent, Jerome Yetsko, accepted the Plaintiff's decision with regret and wished Plaintiff "luck and good health during your [Plaintiff's] retirement". Nowhere in this letter are health care benefits promised or even mentioned. *Thus, Plaintiff's expectations of receiving a retirement incentive package are unfounded and certainly do not serve as a basis for a lawsuit asserting disability discrimination.*

Nonetheless, upon retiring without a guarantee of benefits being extended, Plaintiff decided to file a claim with the Pennsylvania Human Relations Commission ("PHRC"), claiming age and disability discrimination. The claim was dually filed with the U.S. Equal Opportunity Commission ("EEOC"). Defendant timely responded and denied all claims. *In so doing, Defendant pointed out the obvious and indisputable fact that Plaintiff is not "disabled" and has no other basis to assert protection pursuant to the ADA.* After several years of inaction, the PHRC dismissed the Complaint as having

5

no merit. Plaintiff filed a Complaint in Federal Court, initially claiming age and disability discrimination. Defendant filed a Motion to Dismiss both claims. This Honorable Court granted the Motion to Dismiss concerning the age claim and denied the Motion as to the disability claim ordering that discovery be completed on this issue. Discovery has been completed *and Plaintiff has provided no evidence substantiating his claim that he is "disabled" or otherwise entitled to ADA protection. In fact, Plaintiff admitted in his deposition that he is not disabled.* Specifically, Plaintiff stated the following:

> Q. And are you currently receiving your teacher pension from the State?
> A. Yes.
> Q. Do you have any other sources of income?
> A. Social Security.
> Q. No disability payments or anything of that nature?
> A. No. And what little I get out of the farm.
> Q. And you have a farm. Where is that located?
> A. Same address.
> Q. Do you raise any crops or animals, both?
> A. Yes, crops.
> Q. Crops. What type of crops?
> A. Hay, oats, corn, honey, apples.
> Q. And does anyone-do you have anyone hired to work on that farm?
> A. I do not.
> Q. Do you do it yourself?
> A. Yes.
> Q. Does anyone help you?
> A. No.

Plaintiff also admitted that his heart condition is something he has been dealing with since 1992. He asserted he experiences intermittent pain. However, Plaintiff admits that he never had any surgery, and currently does not treat with any health care provider

6

who is a cardiac specialist. Essentially, Plaintiff testified he sees his family doctor on a regular basis and a urologist for kidney stones. *Thus, Plaintiff provided no evidence of any ongoing treatment for a particular heart condition.* When asked if he had ever been hospitalized for his alleged heart condition, Plaintiff could only recall one instance when he went to the emergency room and was treated and released. Despite claiming he had been in physical therapy "for months" because of back pain, Plaintiff could not recall the precise time frame for his treatment, the name of the therapist, the name of the location in which he treated, or whether or not his therapy had been precipitated by an injury. He admitted he currently does not treat with any health care provider for his back problems. None of Plaintiff's medical records indicate he has treated on any on-going basis for either heart or back problems. *Further, none of Plaintiff's records support that either of the purported conditions substantially limit any major life activity. The lack of treatment coupled with Plaintiff's admission that he does all the physical labor on his farm evidences Plaintiff is not "disabled" as a matter of law under the ADA. Further, nothing in Plaintiff's medical file or other information provided to the District would rise to the level of his having a "record" of disability. Finally, the testimony of the District employees is uncontroverted that the Defendant did not "regard" Plaintiff as being disabled. For all of the foregoing reasons, which are indisputably supported by the facts, Plaintiff's claims should be dismissed in their entirety with prejudice.*

Defendant's Statement of Facts (Document No. 34).

7

## II.    ANALYSIS

The remaining cause of action in this civil action is a claim of discrimination based upon a

disability pursuant to the Americans with Disabilities Act (hereinafter "ADA") with a cause of action

under the Age in Employment Discrimination Act having been previously dismissed. The Defendant's

argument in favor of summary judgment is simply that the Plaintiff is not "disabled" as that term is

utilized under the ADA as he does not identify which major life activity he is substantially limited in

performing, "he does not demonstrate that he was substantially limited in a major life activity", and the

Plaintiff has not demonstrated that his heart condition and back condition are disabilities under the

ADA. Defendant's Br., p. 8. Defendant argues in the alternative that assuming that an impairment

exists, that impairment is not a disability and it did not "adversely affect[] his work in any chronic way."

Defendant's Br., p. 10. Furthermore, the Defendant argues that if a disability is recognized by the

Court, the Plaintiff fails to demonstrate what role it played in the Plaintiff's voluntary retirement from

the District. *Id.* Finally, the Defendant also argues that the Plaintiff presents no evidence of being

regarded as disabled or having a record of a disability. Defendant's Brief, pp. 11-15.

## III.    SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c) permits the entry of judgment for a moving party "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." FED.R.CIV.P. 56(c).

8

Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552-57, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c) . An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani [Sav. and Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638].

*Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3rd Cir. 1994).

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *See generally* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes [v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970)]. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is

9

reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 - 2514, 91 L.Ed.2d 202, 216 (1986).

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.Rule Civ.Proc. 56(e) (emphasis added). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986)(internal citations omitted)(footnote omitted). A plaintiff must present evidence in its favor and cannot simply refer to the allegations within its pleadings in order to defeat a motion for summary judgment. *Williams v. Borough of West Chest, Pa*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV.    ADA MIXED-MOTIVE AND PRETEXT ANALYSES

While the Defendant has analyzed the Plaintiff's case through both mixed-motive and pretext theories, it is clear that the Plaintiff need not determine at this juncture which theory he will proceed under, but may delay this decision until the presentation of evidence at trial. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1098 (3d Cir. 1995). However, the Court will proceed with analyzing the Plaintiff's arguments under both a mixed-motive and a pretext theory.

The Defendant has moved for summary judgment under the mixed-motive theory and in doing so discusses the effect of the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90,

123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) and how it may affect the analysis of a claim of discrimination under the ADA.

This Court views the Supreme Court opinion in *Costa* to be limited to mixed-motive Title VII claims only as the issue before the Court was "whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991." *Costa* at 92, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84, 90 (2003). The *Costa* court reviewed the amendments to Title VII that were enacted under the Civil Rights Act of 1991 and found them to permit the use of direct or circumstantial evidence in mixed-motive theories of proving employment discrimination as codified at 42 U.S.C. § 2000e-2(m) and also in the assertion of a partial affirmative defense codified at 42 U.S.C. § 2000e-5(g)(2)(B). *Costa* at 98-102, 123 S.Ct. 2148, 2153-2155, 156 L.Ed.2d 84, 93-96 (2003). The Supreme Court did not address the *McDonnell-Douglas*[1] pretext analyses and how the *Costa* decision may affect its future use and the Court also did not answer the question of which opinion in the *Price Waterhouse*[2] decision was the controlling opinion. *Id.* The Court also did not address the applicability of its ruling to the use of circumstantial evidence in mixed-motive theories as utilized under the related rights and potential claims under the ADA that are governed by the *McDonnell Douglas* and *Price Waterhouse* analyses for pretext and mixed-motive theories, respectively.

This Court finds that the *Costa* court analyzed an amendment to Title VII of the Civil Rights

[1]*McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[2]*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

11

Act of 1964, an amendment specific to that statute that was enacted in response to the Supreme Court's decision in *Price Waterhouse*, a decision based upon a Title VII claim of sexual discrimination only. *Price Waterhouse* at 231, 109 S.Ct. 1775, 1780, 104 L.Ed.2d 268, 276 (1989). Therefore, this Court concludes that the *Costa* decision was specific to Title VII claims, and that the precedent of *Costa* is inapplicable to claims made under the ADA as found in the case *sub judice*. This is in accord with Third Circuit precedent. *See Glanzman v. Metropolitan Mgmt. Corp.*, 391 F.3d 50, 512 n. 3 (3d Cir. 2004). As a result, this Court will apply the *McDonnell Douglas* and *Price Waterhouse* analyses to evaluate whether the Plaintiff can survive summary judgment under either a pretext or mixed- motive analysis.

Although the *Costa* Court declined to address the question of which opinion in *Price Waterhouse* was controlling under this theory, the Third Circuit has taken the position that Justice O'Connor's opinion is controlling. *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 n. 2 (3d Cir. 2002). Therefore, in accordance with Justice O'Connor's opinion in *Price Waterhouse*, in order to prove a claim of discrimination in violation of the ADA based upon a mixed-motive theory, also known as a direct evidence theory, the Plaintiff must present *direct* evidence that his alleged disability was a "substantial factor" in the District's alleged decision not to provide him with the retirement benefits. *Id.* (applying *Price Waterhouse* framework to ADEA claim). "'Direct evidence' means evidence sufficient to allow the jury to find that 'the "decision makers placed substantial negative reliance on [the Plaintiff's disability] in reaching their decision'" to fire him." *Id.* (citations omitted). If the Plaintiff meets this burden of persuasion as to causation, then the Defendant may escape liability through demonstrating that it would have taken its alleged discriminatory action "even if it had not considered

12

his [disability]." *Id.*

Unfortunately, the Plaintiff has presented no proposed counter-statements of material facts to the Defendant's proposed statements of material facts. Therefore, with the Defendant's proposed statements being deemed admitted under Local Rule 56.1(E), the Defendant's statements are controlling and essentially set forth the circumstance that no retirement incentives were given to any teacher let alone the Plaintiff for his final school year, 1996-1997. In fact, the undisputed facts demonstrate that a written request was sent by the Plaintiff to the school board requesting a "retirement package including continued hospitalization coverage" but no response from the Board was forthcoming. *See* page 4, *supra.*

Clearly, the Board declined to take such action as no benefit package was approved and the Plaintiff has since instituted this action. But there is no evidence that the Board's inaction was based upon a "substantial negative reliance on [the Plaintiff's disability]" and in fact, there is no evidence as to the reason for the Board's inaction. Even after considering all of the Plaintiff's exhibits, *see* Document No. 40, the Court finds nothing to raise a material issue of fact regarding any "negative reliance on [the Plaintiff's disability]." Therefore, the Court concludes that there is no question of material fact regarding the Plaintiff's ADA claim if prosecuted under a "mixed-motive" theory, otherwise known as direct evidence theory of causation.

For ADA claims based upon what is known as the pretext or circumstantial evidence theory of proving causation, a plaintiff has the burden of producing evidence demonstrating his *prima facie* case and then the burden of production shifts to the defendant to offer a "legitimate, non-discriminatory

13

reason" for the employer's actions with the burden on the defendant being "relatively light." *Fuentes*

*v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). At the summary judgment stage, the Third Circuit has set

forth the law governing the procedure in such motions with regard to what a plaintiff must do to survive

such a motion after the second step when the defendant has offered a legitimate, nondiscriminatory

reason:

> This basic framework under Title VII illustrates that, to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *See, e.g., Hicks*, 509 U.S. at ----, 113 S.Ct. at 2479; *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir.1992) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095), cert. denied, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). In other words, because the factfinder may infer from the combination of the plaintiff's *prima facie* case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons, *see Hicks*, 509 U.S. at ----, 113 S.Ct. at 2749, a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case.

***

> ...to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons, *see Logue v. International Rehab. Assocs., Inc.*, 837 F.2d 150, 155 (3d Cir.1988) (holding that "the district court erred in failing to consider all of [the employer's] proffered evidence of legitimate business reasons for [the plaintiff's] termination" (emphasis supplied)), aff'd after remand, 866 F.2d 1411 (3d Cir.1989), was either a *post hoc* fabrication or otherwise did not actually motivate the

14

employment action (that is, the proffered reason is a pretext). *See Anderson*, 13 F.3d at 1124; *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.1993).

To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. *See Ezold*, 983 F.2d at 531, 533; *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), cert. denied, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," *Ezold*, 983 F.2d at 531, and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir.1993) (internal quotation omitted); see *id.* at 638 (holding that the proper inquiry is whether the plaintiff has proffered sufficient evidence of "inconsistencies and implausibilities in the employer's proffered reasons"); *Ezold*, 983 F.2d at 527 ("[A] plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision." (internal quotations omitted)); *Chauhan*, 897 F.2d at 128. While this standard places a difficult burden on the plaintiff, "[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Ezold*, 983 F.2d at 531.

*Fuentes v. Perskie*, 32 F.3d 759, 764-765 (3d Cir. 1994)(footnotes omitted). This burden shifting analysis

of *McDonnell Douglas* is applicable to claims under the ADA. *Lawrence v. National Westminster Bank*

*New Jersey*, 98 F.3d 61, 68-69 (3d Cir. 1996).

Turning to the first step of the *McDonnell Douglas* framework, establishing a *prima facie* case,

it has been recognized that:

[t]he ADA prohibits any discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a). The ADA defines the term "qualified person with a disability" as follows:

The term "qualified individual with a disability" means an

15

> individual with a disability who, with or without reasonable
> accommodation, can perform the essential functions of the employment
> position that such individual holds or desires. For the purposes of this
> subchapter, consideration shall be given to the employer's judgment as to
> what functions of a job are essential, and if an employer has prepared a
> written description before advertising or interviewing applicants for the
> job, this description shall be considered evidence of the essential
> functions of the job.

42 U.S.C. § 12112(8). 42 U.S.C. § 12102(2) sets forth three possible definitions of disability for purposes of the ADA: "The term 'disability' means, with respect to an individual--(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Finally, three elements are needed to establish a *prima facie* claim under the ADA: "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1998)(citations omitted).

*Thompson v. AT&T Corp.*, 371 F.Supp.2d 661, 671-672 (W.D.Pa. 2005).

The Court follows a two step process for determining if an individual is substantially limited in a major life activity. The Court must first evaluate the individual's ability to perform major life activities other than working, and if one is substantially limited in any such activity, the person is considered disabled and the inquiry ceases; but if no such limitation is found the Court moves on to consider any substantial limitation in the individual's ability to work. *Thompson* at 673 (quoting *Monzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 783 (3d Cir. 1998)). Based upon the facts of record, the Court is unable to conclude that there is an issue of material fact warranting a jury trial on the question of whether the Plaintiff is substantially limited in his ability to perform any major life activity.

16

After reviewing the Defendant's brief, the Court concludes that the Defendant assumes that the Plaintiff possesses an impairment, not a disability. Therefore, the Court will analyze this matter based upon the presumption that Defendant does not contest the issue of Plaintiff's impairment.

The Court now turns to the first element of the *prima facie* claim, whether Plaintiff is a disabled person, within the meaning of the ADA. The Defendant argues that the Plaintiff is not disabled as his symptoms of chest pain and his condition of degenerative lumbar disc disease do not establish a disability and he does not identify any major life activity that is substantially limited. Defendant's Br., p. 8. Plaintiff responds that chest pain and disc disease "affect the Plaintiff's major activities of lifting, bending, stooping, walking long distances, and other similarly taxing activities." Plaintiff's Br., pp. 3-4. The Plaintiff further argues that these conditions required him to take a sabbatical for the school year 1994-1995, but that after his return, "[i]n spite of these disabilities" his job performance was "equal to or superior to other similarly situated employees" and he was otherwise a "qualified person within the meaning of the [ADA]" Plaintiff's Br., p. 4.

The exhibits introduced into the record by Plaintiff contain no reference to specific substantial limitations in the activities of lifting, bending, stooping, or walking long distances. *See* Plaintiff's Br., p. 10. The closest Plaintiff comes to such a reference is the following portion of the Plaintiff's deposition, page 27:

Q.    In what way?

17

A.    I couldn't do the activities as I had done before, just normal activities, same with the back.

Q.    Such as?

A.    For example, I'd do a lot of outside [sic]. We had orchards and gardens and nature trails and building a greenhouse and so forth. And it just slowed me down.

This paucity of evidence fails to demonstrate the nature or severity of these impairments, any long term impact of these impairments and the restrictions of the condition, duration and manner in which he performs them when compared to others in the general population. *See* 29 C.F.R. § 1630.2(j). It is not even demonstrated that the Plaintiff has completely stopped engaging in these "normal" activities. The evidence fails to demonstrate that the Plaintiff is substantially limited in his major life activities of lifting, bending, stooping and walking long distances. In accordance with the *Monzelewski* precedent, the Court notes that the Plaintiff also fails at the second step of this evaluation by failing to present evidence of any substantial limitation in the major life activity of working, and therefore, the Court finds there is no such limitation.

The Plaintiff also argues that he is "perceived" by the Defendant as being disabled, an argument that the Court interprets as meaning that the Defendant has "regarded [the Plaintiff] as having such impairment" in accordance with 42 U.S.C. § 12102(2)(C). However, the Plaintiff also fails to present a *prima facie* case under this alternative definition of disability based upon the evidence of record. The fact that the Defendant responded to a request for information from a disability insurance carrier and did not indicate that such a claim, which did not involve the Defendant or its disability insurance carrier, was in the Defendant's belief disingenuous does not constitute proof that the Defendant regarded the Plaintiff as disabled. The Defendant had no

18

interest in such a claim and had no responsibility to opine on such a claim to an insurance carrier

that was independent of any claim made to the Defendant.

> The Third Circuit has recognized that there are three means of demonstrating
> that a person is "regarded as" having an impairment: 1) "despite having no impairment
> at all, the employer erroneously believes that the plaintiff has an impairment that
> substantially limits major life activities;" 2) "the plaintiff has a nonlimiting impairment
> that the employer mistakenly believes limits major life activities;" or 3) "if he or she
> '[h]as a physical or mental impairment that substantially limits major life activities' only
> as a result of the attitudes of others toward such impairment." *Tice v. Centre Area
> Transportation Authority*, 247 F.3d 506, 514 (3rd Cir.2001). The Third Circuit in *Tice*
> also indicated that "an inquiry into how an employee was 'regarded' is necessarily quite
> fact-specific, and all of the surrounding circumstances may be relevant in reaching a
> conclusion." *Id.* at 515. "[T]he mere fact that an employer is aware of an employee's
> impairment is insufficient to demonstrate either that the employer regarded the
> employee as disabled or that that perception caused the adverse employment action."
> *Kelly v. Drexel University*, 94 F.3d 102, 109 (3d Cir.1996). In establishing that an
> employer regarded an employee as having a disability, the employee must demonstrate
> that the employer regarded the employee as having a disability that if real would
> substantially limit a major life activity. *See Tice v. Centre Area Transportation
> Authority*, 247 F.3d 506, 514 (3d Cir.2001)(finding that "substantially limits" applies
> in the same manner throughout the ADA statute); *Sutton v. United Air Lines, Inc.*, 527
> U.S. 471, 489-493, 119 S.Ct. 2139, 2149-2151,144 L.Ed.2d 450, 466-469 (1999).

*Thompson v. AT&T Corp.*, 371 F.Supp.2d 661, 676 (W.D.Pa. 2005).

The Court finds that the undisputed facts of record reveal that the Defendant at most recognized

the existence of an impairment, but these facts do not establish that Defendant regarded the Plaintiff

as being disabled. Recognition of an impairment does not equate to regarding someone as being

disabled. *See Kelly v. Drexel University*, 94 F.3d 102, 109 (3d Cir. 1996). The Defendant, at the request

of his physician, was granted sabbatical leave after being notified that he was being treated for "chest

pains and degenerative lumbar disc disease." Plaintiff's Exhibit B (Document 40). After his return,

the Plaintiff did not perform his duties with any accommodation or restrictions, and there is no evidence

19

of a reduced or changed work schedule based upon any disability or even an impairment. The Defendant responded to State Farm Insurance Company's questions regarding the Plaintiff in relation to its disability insurance policy for the Plaintiff, but the Defendant did not state a belief that the Plaintiff was disabled. In fact, the Defendant indicated that no worker's compensation claim had been filed and no group disability insurance benefits were applicable to the Plaintiff. Plaintiff's Exhibit E (Document No. 40). Furthermore, this questionnaire from State Farm was sent during the period of time the Plaintiff was on sabbatical leave which the Defendant explained as "sabbatical leave for reason of health for the 1994-1995 school year." Plaintiff's Exhibit F. The phrase "reason of health" is vague, and the use of this term is not equivalent to describing Plaintiff's condition in terms of a disability or impairment. The Court does not find that this language establishes that the Defendant regarded the Plaintiff as disabled as that term is understood in the ADA, particularly when the Defendant indicated to State Farm that it expected the Plaintiff to return to work the following school year. Plaintiff's Exhibit F. The Court cannot agree with the Plaintiff that the granting of a sabbatical for health reasons was such an extreme action as to be equivalent to an acknowledgment that the Plaintiff was disabled. Additionally, the fact that the Defendant did not offer an opinion to State Farm that the Plaintiff's insurance claim was "fraudulent" does not establish that the Defendant believed the Plaintiff's claim on his own disability insurance policy had merit.

Therefore, because the Plaintiff has not demonstrated from evidence of record that an issue of material fact exists as to whether a substantial limitation exists as to any of his major life activities or that he is regarded as being disabled by the Defendant, the Plaintiff has failed to present a *prima facie* case of discrimination under the ADA using the pretext theory. Therefore, the Court need not evaluate

20

the remaining steps of the *McDonnell Douglas* analysis.[3]

    An appropriate Order follows.

    **AND NOW** this 19th day of June, 2006, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant's Motion for Summary Judgment (Document No. 33) is GRANTED.

    IT IS FURTHER ORDERED THAT the Clerk of Court shall enter judgment in favor of the Defendant and against the Plaintiff.

                           **BY THE COURT:**

                           **KIM R. GIBSON,**
                           **UNITED STATES DISTRICT JUDGE**

---

[3]Although the Defendant analyzed the issue of the Plaintiff having a record of a disability, the Plaintiff did not address this issue or refer to any evidence of record to counter the Defendant's argument. In addition to the fact that the Plaintiff failed to argue this point, any argument for the presence of a record of disability must first "demonstrate that the recorded impairment is a "disability" within the meaning of the ADA." *Tice v. Centre Area Transportation Authority,* 247 F.3d 506, 513 (3d Cir.2001). In other words, the fact that an impairment is recorded does not equate to the fact that the recorded impairment is a disability under the ADA. The recorded impairment must be proven to qualify as a disability under the ADA. The Plaintiff has failed to do this according to this Court's analysis, *supra,* pp. 17-18, under the "substantially limits" basis of disability. Consequently, the Court finds that summary judgment is appropriate on this definition of disability as well.